## Daniel and Breck *vs* Smythe.

APPEAL FROM THE GARRARD CIRCUIT.

*Vendor and vendee. Rescission. Attachment.*

CHIEF JUSTICE EWING delivered the opinion of the Court.—Judge Breck did not sit in this case.

CHANCERY.

*Case* 82.

*April* 23.

The case stated.

IN September, 1841, Abner G. Daniel sold a tract of land, near Lancaster, of 120 acres, to Edmond B. Smythe, for $4,150, payable in four instalments, the first to fall due on the 25th December following, the second on the 1st day of January, 1843, the third on the 1st day of January, 1844, and the fourth on the 1st day of January, 1845. On the 21st day of September, 1841, a general warranty deed was executed and delivered to Smythe by Daniel and wife, and on the same day, notes were executed by Smythe to Daniel, for the instalments, and the former was let into the possession of the land. On the 27th of January, 1842, Smythe filed the bill in this case to rescind the contract, alledging fraud in the sale, first in showing a slip of land covered with valuable timber, as embraced in the tract sold, which was not included; second, failing to show a square rood of land which had been reserved for a family grave yard by the original proprietor; third, in the entire want of title in Daniel, and, fourth, in the fraudulent concealment that prior to the sale, a chancery attachment had been levied on the land to satisfy some claims set up by Jennings' executors against Daniel. A reference is made to the chancery proceedings, as a part of the bill, and a charge that "the whole matter in controversy, for which the attachment was levied as aforesaid, still remained unsatisfied and open to *future* investigation, and how the same *may be determined* the complainant cannot tell, and he believes it quite probable that the land sold *will*, at some not far *distant* period, *be made subject* to the *payment* or *satisfaction* of said *claim.*" On the 31st March, 1842, an amended bill is exhibited by Smythe, in which he alledges that his notes had been assigned to Daniel Breck, who

DANIEL AND
BRECK
vs
SMYTHE.
had recovered judgment against him upon the first note that fell due, and was proceeding to coerce payment. He charges fraud and combination between Breck and Daniel, and prays and obtains an injunction against the judgment, and further alledges that on the 14th February, 1842, he had notified Daniel that he renounced the contract as fraudulent and would abandon the possession on the 1st of March following, and that he had abandoned the possession and tendered the key of the dwelling house to Daniel. Breck answered denying combination or fraud. Daniel answered, substantially denying all fraudulent representation or concealment, exhibited his derivation of title, and charges that it embraces all the land and timber shown to the complainant, and that the land has been occupied under his title for more than fifty years. He denies that Jennings' executors held any lien on the land at the time of the sale. He admits that they, prior to the sale, had sued out a chancery attachment against him, but illegally and without cause, and that he had executed bond and security to abide and perform the decree should there be one in favor of the executors, and his property was thereby released. And if at the time of the sale there was any lien or incumbrance on the said land, the respondent *did not know it*.

On the 10th of March, 1843, the complainant filed a third amended bill, in which he alledges that Breck had recovered a judgment on the second note, and an injunction is prayed and obtained against its collection, and numerous charges are made of haste and contrivance in the execution of the deed, all of which are denied by Breck and Daniel.

It was also charged in a former amendment by the complainant, that he had purchased other lands after he discovered the fraud and renounced the contract, in the payment for which he had exhausted his means to pay for the land purchased from Daniel.

Decree of the
Circuit Court.
The Circuit Court decreed a cancelment of the contract of sale, a surrender of the title of the land to Daniel, and of the two notes for the last instalments to Smythe, and a perpetuation of the injunction against the judgments recovered upon the two first notes, and that Daniel pay

the costs.   And Daniel and Breck have  appealed  to this Court.

The  complainant's right to relief wholly fails, and is abandoned by his counsel, upon all the grounds relied on in his bill and numerous amendments, except the  single ground of *concealment* of the  prior lien  on the land in favor of Jennings' executors.

It appears from an  examination  of the record in the case of Jennings' executors, that they in February before the sale, had  filed a bill against  Daniel and others, for the settlement of the estate, in  which they set up claims against Daniel, and prayed and obtained an order, under the statute of 1838, injoining Daniel from alienating the tract of land in contest, and a house and  lot, and slaves, and store,  enumerated as  belonging to him, and attach· ing the slaves and holding them in custody,  unless Dan· iel would execute  bond with sufficient security, for *satisfying* any *decree* that may be finally *rendered* against *him* in *the suit*.   A subpœna with injunction and attachment, was accordingly issued,  and was executed,  and Daniel, with approved security, executed bond, conditioned  to have said slaves, town lot, land and other property, forthcoming to abide the decree of the Court, in the suit aforesaid,  or on failure, shall  well and truly  pay to the executors, all damages and costs that may be awarded against them, in  consequence thereof; said  chancery suit was depending at the sale to Smythe, and is yet undetermined. But at the May term, 1842, this order is made, "by consent of parties,  ordered that  the  complainant's injunction so far as it has or may operate  upon or restrain said Daniel, as to the tract of land near Lancaster, where said Daniel formerly lived, called the Storms place, be  discharged."

This is the tract of land sold to Smythe, the complainant.   Though it is urged  that  this order is not a part of the record  referred to and made a part of the complainant's bill, as it was not made until after the reference was made to the proceedings in the case of Jennings' executors, we think that the whole record,  embracing the steps that were subsequently taken in  said case,  as well as  those that existed at the time of the reference, compose a part

*When the record of a suit is referred to in a pleading in chancery, as a pending suit as  well the orders then made, as those subsequently  made, constitute a part of  the  record, and should be looked into as such.*

of the record in this case, and may be looked into by the Court. It was referred to as a pending and *progressing* suit, and alledged as a ground of *apprehended* danger in the complainant's bill, and in case of final success, had no discharge of the injunction been entered, it might have overreached the same. It was surely not necessary for the complainant at each successive step, in that case, to amend his bill so as to make such order or step a part of his ground of complaint, or evidence in his behalf; and if he could rely upon such subsequent steps or orders, in support of his right to rescind, Daniel might surely rely upon them against his right. If in the progress of that case, the danger to his title thickened, he could surely show it by a reference to the record. And if, on the contrary, in its progress all ground of complaint was removed, Daniel might surely show it by reference to the same record.

This order being admitted as evidence, it seems to us that there was no plausible reason for the dissolution of the contract, on this ground of objection to or defect in the title. If there was ever any danger on that score, which could only be determined by success in that suit, and a decree for the sale of the land, that [danger is removed by the order, and the title of the complainant rendered perfect.

A Chancellor will never dissolve, even an executory contract, at the instance of a complainant seeking a dissolution, on the ground of a defect in or incumbrance on the title, if the incumbrance be removed, and the title rendered perfect before the hearing, especially if there be no fraud on the part of the vendor by which injury accrues to the vendee. In this case, the fraud and bad faith charged against Daniel in relation to this incumbrance, is not sustained. It is true, he did not advise the complainant of the institution and pendency of the suit of Jennings' executors, and of the lien on the land created by the same. But he gives a very plausible reason for not doing so, namely, that he had executed a bond with approved security, to abide the decree, and the property attached was discharged, and he honestly believed that his estate was no longer encumbered by that proceeding,

The chancellor
will not dissolve
the contract for
defect of title,
or incumbrance,
if the defect be
remedied or in-
cumbrance re-
moved before the
hearing.

and if there was a lien on the land, he did not know it. He might readily have been led into this mistaken opinion from the fact, that by the execution of injunction, replevin and other statutary bonds in judicial proceedings, the property levied on is discharged. And it has been made a serious question in this Court, and strenuously urged, that the execution of the bond with sureties discharged the property attached, under a chancery attachment, from the custody of the law, and subjected it to alienation, or to the levy of a second attachment, and the latter principle was sustained by the learned Ex-Chancellor of Louisville. It is true, that the order in this case did not direct the land to be attached, but merely ordered that Daniel be enjoined from alienating it. But the order directed the attached effects to be restored, upon the execution of a bond with security to *abide* by and *perform* the *decree,* and the condition of the bond, though it went further than the order, yet was made to embrace the land and other property, as well as the attached effects; and embracing all, Daniel might well have concluded that all was discharged by the execution of the bond and security required. Upon the whole, we are perfectly satisfied that Daniel did not, with any *fraudulent purpose,* or *bad motive,* keep back o. conceal from the complainant, the fact of the executors of Jennings' suit, or the fact of an incumbrance upon the land in consequence thereof.

Upon what ground then has the complainant a right to a rescission of the contract, if not upon the ground of a fraudulent concealment? It is urged that he has a right to it on the ground of injury. If he is injured, his injury has resulted from bad counsel, and his own hasty and improvident conduct. It has not originated from any act of Daniel. He had paid no part of the consideration, and had it perfectly in his power to have remained in possession of the land, and enjoined the payment of the whole consideration, until the *suit* of Jennings' executors was determined, or Daniel should procure a discharge from that incumbrance. If he left and purchased other lands, exhausting his means in paying for the same, he

did it of his own accord, and at his own peril, and must abide the consequences.

The decree of the Circuit Court is reversed, and cause remanded, that a decree may be rendered dismissing the complainant's bill, and dissolving his injunction against the judgment at law, rendered upon the first notes that fell due, without damages, and dissolving the injunction against the judgment rendered upon the second note, with ten per cent. damages, and the complainant below is entitled to his costs in the Court below, up to and including the term at which the order was made discharging the injunction, in the case of Jennings' executors vs Daniel and others, and after that time the defendants below are entitled to their costs, and also entitled to their costs in this Court.

*Caperton* for appellants : *Turner and Bradley* for appellee.

---

CHANCERY.

*Case* 83.

*April* 21.

The case stated.